## O'Connor *v.* Armstrong et al., Appellants.

Argued February 3, 1930.   Before Moschzisker, C. J.,
Frazer, Walling, Simpson, Sadler and Schaffer, JJ.

*H. Heber Dithrich,* County Solicitor, and *Charles K.
Robinson* and *Charles A. Woods, Jr.,* for appellants.—
The constitutional amendment is self-sufficient and self-
executing with respect to the right to resubmit the char-
ter in original form at any subsequent election until

adopted and no further legislation is necessary: Pierce v. Com., 104 Pa. 150; Reading City v. Althouse, 93 Pa. 400.

The primary and dominant purpose of the amendment and of the charter is to provide for the creation of the consolidated City of Pittsburgh and every step necessary and essential to this objective must be considered to have been in contemplation, and to have been provided for, and the language of the amendment and of the Charter Act must be so construed: Com. v. Coal Co., 296 Pa. 359; Com. v. Wilkes-Barre, 258 Pa. 130.

The county commissioners of Allegheny County under existing laws have full and ample authority and are fully advised and informed as to all things necessary to be done in resubmitting the charter for the approval or rejection of the electors of Allegheny County; complete machinery for resubmitting the question to the electors is provided by the election laws of the Commonwealth: White v. Meadville, 177 Pa. 643; Buttorf v. City, 268 Pa. 143, 146; Beloit Iron Works v. Lockhart, 294 Pa. 376, 382; Com. v. Kline, 294 Pa. 562, 566.

The electors of Allegheny County have the right and power as a political unit of the Commonwealth to pass again upon their form of government, which has already been approved by the electors of the Commonwealth in the amendment, and approved again in the enactment of a charter by the legislature, unless this right and power of self-government is expressly denied by the Constitution or laws of the Commonwealth: Wheelock's Election, 82 Pa. 297.

The Metropolitan Plan Commission, a creature of the legislature created with the purpose of developing the charter plan, has been continued by the legislature of 1929 for the furtherance of the charter program, and, as such agent of the legislature, is the proper body to request the county commissioners of Allegheny County to resubmit the charter.

*Wm. M. Hall,* for appellee, cited as to self-executing Constitutions: Com. ex rel. v. Mitchell, 80 Pa. 57; Com. ex rel. v. Harding, 87 Pa. 343; Pierce v. Com., 104 Pa. 150.

OPINION BY MR. JUSTICE SIMPSON, March 17, 1930:

Appellants correctly say that the only question to be decided on this appeal is whether or not "the county commissioners of Allegheny County can resubmit the charter for the Consolidated City of Pittsburgh in its original form to the electors of Allegheny County, without further legislation" than is contained in the Act of April 18, 1929, P. L. 573. This statute was passed in pursuance of authority given by the amendment to article XV, section 4, of the Constitution of the State, and directs that the charter detailed in it shall be submitted to the electors for their approval or disapproval at a specified date, without providing for any resubmission, and without stating anything else which aids appellants. By it the duties of the county commissioners are set forth at length, so far as concerns the first and only submission authorized by the legislature; but they are given no duties and vested with no powers relative to any resubmission, if one should be had.

At the special election held at the time fixed by the act, the proposed charter did not receive the required number of votes, and hence was not approved. Thereupon, the Metropolitan Plan Commission,—which was organized and continued by virtue of the provisions of various statutes, for the purpose of studying the subject of the consolidation of the cities, boroughs and townships in Allegheny County, and to make a report to the legislature, but had no other statutory authority,—urged the commissioners to resubmit to the electors the question of approving the proposed charter.

The right of the commissioners to do this was first sought to be established by a proceeding under the Uniform Declaratory Judgments Act of June 18, 1923, P. L.

840, but we held the matter was one outside of the purview of that statute: Pittsburgh's Consolidated City Charter, 297 Pa. 502. At the request of the commission, the county commissioners then adopted a resolution setting forth their intention, without further legislation, to resubmit the proposed charter to the electors in the form specified in the statute, the vote to be taken at the general election on November 4, 1930. The present taxpayer's bill was then filed against the county commissioners only, averring that such resubmission would be illegal, and that, unless the commissioners were enjoined by a decree of court, the taxpayers would be put to a serious expense, without any warrant of law. The Metropolitan Plan Commission thereupon applied for and was given leave to intervene as a party defendant. The facts averred in the bill were admitted by the answer; the court below decided the commissioners were without power in the premises, and enjoined them from proceeding further in the matter; and from that decree this appeal was taken.

Appellants frankly admit there is nothing in the constitutional provision or in the statute which aids their contention, unless it is to be found in the following extract from the former (P. L. 1927, page 1051) : "Section 4. The General Assembly is hereby authorized to provide for the consolidation of the county, poor districts, cities, boroughs, and townships of the County of Allegheny, and the offices thereof, into a consolidated city and county, with the constitutional and legal capacity of a municipal corporation, to be known as the City of Pittsburgh, and to provide for a charter for its government. The said charter shall be submitted to the electors of said county, at a special election to be provided for therein. If the majority of the electors voting thereon, in the county as a whole, and at least two-thirds of all the electors voting thereon in each of a majority of the cities, boroughs and townships thereof, vote in the affirmative, the act shall take effect for the whole county.

If rejected, the said charter may be resubmitted to the electors in original, new or modified form, at any subsequent election until adopted."

It will be noticed that the only authority given is to the legislature: "The General Assembly is hereby authorized." All the details of any and every submission are placed in its hands, and it has not provided for any other than the first submission. Nevertheless, relying solely on the last sentence above quoted, appellants say it gives the commissioners the power to resubmit in the original form, viz.: "If rejected, the said charter may be resubmitted to the electors in original, new, or modified form at any subsequent election until adopted." "May be resubmitted," not "must" be, evidently under legislative authority, for that is the only constitutional authorization. How "may" it be resubmitted,—"in original, new or modified form?" Appellants admit that it cannot be submitted in a "new or modified form" save under express legislative sanction, of which there is none. But who shall decide in what form it is to be resubmitted? The resubmission must be authorized by some authority, and here there is none except that given to the legislature, which has not approved of any form of resubmission. "The courts are not at liberty to disregard the plain meaning of words of a Constitution in order to search for some other conjectured intent": 6 R. C. L. 52.

Appellants admit also that, by the constitutional provision, the legislature still has the power to direct the resubmission to be in the original form, and by it also, as we have already pointed out, the county commissioners are expressly given duties to perform in relation to the first submission, but none as to any resubmission. This being so, appellants' contention necessarily fails, for "the expression of one thing in the Constitution is the exclusion of things not expressed": Page v. Allen, 58 Pa. 338; Com. v. McAfee, 232 Pa. 36, 44. Moreover, under this admission their anomalous position is that

a resubmission in the original form may be required by either the legislature or the county commissioners, though there is nothing in the constitutional provision which gives the slightest color thereto. Probably no instance can be found in constitutional history, certainly none has been cited to us and we have found none, wherein a Constitution has given to the legislative body, and also to subordinate local officials under that supreme power, a like right in requiring any public action.

The anomaly referred to is intensified by appellants' admission that if the charter is to be resubmitted in a "new or modified form" it must be by express authorization of the legislature. The collocation of the words "original," "new" and "modified," without anything to show that the authorization regarding one is in any respect different from that regarding the others, excludes the idea of the existence of such a distinction, especially when it is recalled that, where the language used is untechnical, it is to be construed as the people who voted for the constitutional provision probably understood it: Monongahela Navigation Co. v. Coons, 6 W. & S. 101, 114; Long v. Cheltenham Twp. School Dist., 269 Pa. 472; Busser v. Snyder, 282 Pa. 440; Com. v. Dabbierio, 290 Pa. 174.

To sustain their theory, appellants claim that the constitutional provision is self-executing; but this cannot be. Until now, so far as we are aware, no one has ever contended that a small fraction of a constitutional provision, inextricably tied up with all the rest, is self-executing, while the rest is not. "A provision that the legislature should make suitable provisions for carrying a constitutional amendment into effect is obviously addressed to the legislature, and is indicative of the intention that such amendment should not become effective until made so by act of the legislature. ...... In other words, it must be regarded as self-executing if the nature and extent of the right conferred and the liability imposed are fixed by the Constitution itself, so that they

can be determined by an examination and construction of its terms, and there is no language indicating that the subject is referred to the legislature for action": 6 R. C. L. 58-9. The rule is similarly stated in 12 C. J. 734. Here the matter is, in terms, "referred to the legislature for action"; and hence the right to act is limited to that which the legislature has declared.

There is, moreover, an even more serious consideration, partially indicated above, which determines the case antagonistically to appellants' contention, viz., that it runs counter to our system of government. Counties, and the other political subdivisions of the State, are only creatures of the legislature, charged by it with the performance of certain of the State's duties, and subject to control and even destruction at the hands of the legislature, in which is vested the State's sovereignty. It would be possible, of course, for the people to provide in their Constitution, that one of these local subdivisions should have imposed upon it such duties as that for which appellants contend, but this would have to be done expressly, and not by implication merely. "An amendment should not be construed as affecting any greater innovation on the existing Constitution than is reasonably necessary to accomplish the object of its enactment;......the relation of a doubtful provision to known political truths and to political institutions will be considered; and previous legislation and the usages of the government will also be given weight": 12 C. J. 710-11. In the existing Constitution of the State there is not a single instance where such a duty has been imposed on one of these local subdivisions; all such matters are left to the legislature. It would require clear language indeed to engraft on the Constitution something so much out of harmony with the general plan. Admittedly, no such language appears here.

The decree of the court below is affirmed, and the appeal is dismissed at the cost of appellants.