**LINCOLN PARTY, an Unincorporated Association by Gary ROBINSON, Trustee Ad Litem, Petitioner,**

v.

**GENERAL ASSEMBLY, et al., of the Commonwealth of Pennsylvania and Attorney General, et al., of the Commonwealth of Pennsylvania, Respondents.**

Commonwealth Court of Pennsylvania.

Argued April 15, 1996.

Decided Sept. 10, 1996.

George E. Walker, for Petitioner.

Kate L. Mershimer, Senior Deputy Attorney General, for Respondent.

Before DOYLE and McGINLEY, JJ., and NARICK, Senior Judge.

DOYLE, Judge.

On November 3, 1995, the Lincoln Party, an Unincorporated Association, "by Gary Robinson as Trustee Ad Litem," filed a petition for review with this Court in our original jurisdiction seeking to delay the November 7, 1995 plebiscite on a proposed constitutional amendment to Article I, Section 9 of the Pennsylvania Constitution.

The Respondents in the suit are the Attorney General "and the appointed or hired staffs and employees that [sic] had any involvement in this proposed amendment," the General Assembly, that is, the members of the Senate and the House of Representatives (past and present) "and their appointed or hired staffs and employees that [sic] had any involvement in this proposed amendment."[1]

The Lincoln Party sought to delay the November 7, 1995 vote on the proposed constitutional amendment until the November 5, 1996 general election, so that the General Assembly could adequately inform the public of the effects of the proposed amendment.[2] The proposed constitutional amendment is as follows, with brackets, indicating the language proposed to be deleted, and underscoring, indicating the language proposed to be added:

§ 9. Rights of accused in criminal prosecutions

In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of

---

1. *See* Lincoln Party's Petition for Review, paragraphs 3 and 4.

2. The Lincoln Party also filed a second suit in mandamus requesting a jury trial to determine whether the ballot question on the amendment to the constitution provided an adequate basis for

an informed decision on the issue. However, neither the Attorney General nor the General Assembly have filed preliminary objections to this second action up to this time. That action, therefore, docketed at No. 535 C.D.1995, is not addressed in this opinion.

the accusation against him, to [meet the witnesses face to face] *be confronted with the witnesses against him,* to have compulsory process for obtaining witnesses in his favor, and in prosecutions by indictment or information, a speedy public trial by an impartial jury of this vicinage.... *Notwithstanding the provisions of this section, the General Assembly may by statute provide for the manner of testimony of child victims or child material witnesses in criminal proceedings, including the use of videotaped depositions or testimony by closed-circuit television.*

Article I, Section 9 of the Pennsylvania Constitution; *see* 25 Pa. B. 3090 (1995).

In essence, the underlying impetus for the proposed amendment was twofold. The first purpose was to modify the Pennsylvania Constitution to more closely mirror the Sixth Amendment of the United States Constitution, which provides that an accused person shall have the right to "be confronted with the witnesses against him"; thus, with the change in the Pennsylvania Constitution, Pennsylvania tribunals would cease granting more protection than that which is conferred by the United States Constitution.[3] The second purpose of the amendment was to grant authorization to the General Assembly to enact legislation to permit children testifying in criminal proceedings to do so through alternative methods, such as, but not limited to, videotape or closed-circuit television so that children could be spared the anxiety associated with facing an accused, especially where the child witness is a victim of the criminal activity. *See* 25 Pa. B. 3090 (1995). This suit, having been filed on the Friday immediately preceding the Tuesday, November 7, 1995 election, of course, was not filed in sufficient time to halt the plebiscite. Accordingly, the question was placed before the voters of Pennsylvania on Tuesday, November 7, 1995, and they approved the proposed amendment by an overwhelming margin.

In response to the Lincoln Party's petition for review, the Attorney General and the General Assembly filed separate preliminary objections, which were then consolidated for argument by this Court. The Attorney General, in his preliminary objections, objects on the basis that: (1) the Lincoln Party lacks standing; (2) the petition of the Lincoln Party fails to present a case or controversy; (3) the action is moot; and (4) there exists no cause of action. The General Assembly objects on the grounds that the Lincoln Party's claim against the Legislature should be dismissed because the General Assembly is immune from suit under the Speech and Debate Clause, Article II, Section 15 of the Pennsylvania Constitution.

■ A court in deciding a preliminary objection in the nature of a demurrer must accept as true all well-pleaded allegations, and a demurrer will be sustained only when it appears that in accepting all of the allegations as true, no recovery under the law exists under any theory of law. *Zemprelli v. Thornburgh,* 73 Pa.Cmwlth. 101, 457 A.2d 1326 (1983).

### PRELIMINARY OBJECTIONS BY THE ATTORNEY GENERAL

#### A. Standing

The Attorney General first asserts that the Lincoln Party lacks standing because it merely asserts a common interest of the public in general and has failed to identify any of its membership, even the name of **one** of its members. Although Gary Robinson is named in the caption as "Trustee Ad Litem" for the Lincoln Party, he is not otherwise identified anywhere in the body of the petition as a member of the Lincoln Party.

■ Standing to bring a suit is a prerequisite for a person to obtain a judicial resolution of a dispute. It is well-established that for a person to have standing, he or she must be aggrieved by the matter being challenged. *William Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975); *Nader v. Hughes,* 164 Pa.

---

**3.** *See* U.S. Const. amend. ·VI; 25 Pa. B. 3090    (1995).

Cmwlth. 434, 643 A.2d 747 (1994). "Aggrieved" is defined as having an immediate, direct and substantial interest in the challenged matter beyond the interest of an individual member of the general public. *Citizens for State Hospital v. Commonwealth*, 123 Pa.Cmwlth. 150, 553 A.2d 496 (1989), *aff'd per curiam*, 529 Pa. 2, 600 A.2d 949 (1992), *cert. denied, sub nom. Basalyga v. Pennsylvania*, 494 U.S. 1017, 110 S.Ct. 1321, 108 L.Ed.2d 496. The party must demonstrate a "sufficiently close causal connection between the challenged action and the asserted injury to qualify the injury as 'immediate' rather than 'remote.'" *William Penn Parking Garage*, 464 Pa. at 202, 346 A.2d at 286.

■■■ Although an unincorporated association may have standing, even in the absence of injury to the association itself, it must plead a direct, immediate and substantial injury to at least one of its members to meet the requirements for standing. *Pennsylvania Gamefowl Breeders Assoc. v. Commonwealth*, 533 A.2d 838 (Pa.Cmwlth.1987), *reaff'd after reconsideration*, 538 A.2d 645 (Pa.Cmwlth.1988). Standing may be conferred upon an association solely as the representative of its members and an association may begin a cause of action if its members are suffering immediate or threatened injury as a result of the contested action. *National Solid Wastes Management Association v. Casey*, 135 Pa.Cmwlth. 134, 580 A.2d 893 (1990). However, the complaint or petition must assert that at least one of its members has or will suffer a "direct, immediate and substantial injury" to his or her interest as a consequence of the action. *Id.* 580 A.2d at 899.

■■■ In the instant case, the Lincoln Party's petition for review is devoid of **any** averment which would establish that it has standing. It merely identifies itself as an unincorporated association, neglecting to set forth the nature of its membership or the names of any of its members. The only allegation in the Lincoln Party's petition for review suggesting that it is aggrieved by the actions of the General Assembly and the Attorney General is a general averment which states:

> **Plaintiffs** interest is to preserve **their** God-given rights and their constitutional rights as **citizens** of the Commonwealth of Pennsylvania in the strongest possible form. **Plaintiffs** require this protection from the abuse by government officials in potential criminal prosecutions based upon false charges and false testimony by either adult or minor witnesses which would be abrogated by this amendment by reducing the defendant['s] right to cross-examine in **all** [emphasis in original] criminal prosecutions.

(The Lincoln Party's petition for review at 4.) (Emphasis added.) In this respect, the Lincoln Party is merely alleging the common interest of all citizens of the Commonwealth, thus, failing to assert any direct or immediate harm. Moreover, the Lincoln Party fails to establish association standing by neglecting to identify **any** of its members (even though the petition appears to assert more than one individual's rights by using the plural, "plaintiffs"). Accordingly, we conclude that the Lincoln Party, as an unincorporated association, lacks standing.

Although this Court could dismiss the Lincoln Party's petition for review on this basis alone, because this is an original jurisdiction matter, we are inclined to address the Attorney General's other objections, as well as the preliminary objections of the General Assembly.

### B. Case or Controversy

The Attorney General also argues that the Lincoln Party has failed to plead a case or controversy because it did not allege a distinct and palpable injury to itself.

■■■ The law is clear that a party seeking relief must present an actual case or controversy to be afforded judicial relief, *Pennsylvania Gamefowl Breeders Assoc.*, and "[t]he requirements of a case or controversy dictate that a plaintiff allege a distinct

and palpable injury to himself." *Concerned Taxpayers of Allegheny County v. Commonwealth*, 33 Pa.Cmwlth. 518, 382 A.2d 490, 493 (1978). Here, the Lincoln Party has failed to allege in what manner the proposed amendment would cause it a distinct and discernible injury. Therefore, on these grounds also, the Attorney General's preliminary objections are well taken; the Lincoln Party has failed to present a case or controversy.[4]

### C. Mootness

The Attorney General further objects that the Lincoln Party's action is moot because the proposed amendment to the Constitution has already been presented to the electors and on November 7, 1995, the electorate approved the amendment overwhelmingly by a vote of 1,176,652 in favor of the proposal to 400,727 against the proposal.

■■■ The law is well settled that an actual case or controversy must exist at all stages in a case, or such case will be dismissed as moot. *Strax v. Department of Transportation, Bureau of Driver Licensing*, 138 Pa.Cmwlth. 368, 588 A.2d 87 (1991), *aff'd per curiam*, 530 Pa. 203, 607 A.2d 1075 (1992). A court will not address moot or abstract questions except in extraordinary circumstances or where the issues are capable of repetition. *Id.*

On June 22, 1994 the General Assembly approved for the first time Joint Resolution No. 1, which was the proposed amendment to Article I, Section 9 of the Constitution. Then in February of 1995, the General Assembly again passed an identical Joint Resolution, which is the prescribed manner of amending the Constitution in accordance with Article XI, Section 1, which requires that an amendment be approved by the General Assembly in two successive Legislative sessions, and be duly advertised throughout the Commonwealth after each passage.[5]

■■■ The Lincoln Party filed its petition for review just four days prior to the November 7, 1995 general election, seeking to delay the vote on the proposed amendment for an entire year after it had been approved by the General Assembly as early as June of 1994, with notice of such approval published throughout the entire state. It is immediately obvious that such suit at that time could not possibly halt the mechanics of placing the question on the ballot four days hence, so the amendment did appear on the ballot with the result that it was approved by an overwhelming number and the citizens who did vote on November 7, 1995. Therefore, because of the factual circumstances of this case, the Lincoln Party's request is moot. Additionally, no extraordinary circumstances exist, nor is this issue repetitive in nature.

### D. Failure to State a Claim

Finally, the Attorney General further objects on the grounds that the Lincoln Party failed to state a cause of action because the petitioner failed to identify a legal right requiring the Attorney General to perform a specific act, that is, to advise the electorate of the effects of the proposed Constitutional Amendment.

The Lincoln Party, in its petition for review, requested that the vote on the proposal be postponed so that the Attorney General could inform the public of the full implications of the proposal and argues that the ballot question itself was insufficient to so inform the electorate.

■■■ Of course, mandamus can only be used to compel public officials to perform the

4. *Compare Pennsylvania Academy of Chiropractic Physicians v. Department of State, Bureau of Professional and Occupational Affairs*, 129 Pa. Cmwlth. 12, 564 A.2d 551 (1989)(finding that a case and controversy existed where the chiropractic physicians organization alleged that, as a result of an advisory notice that the use of the phrase "chiropractic physician" was prohibited, their membership was decreasing).

5. "[A]nd the Secretary of the Commonwealth shall cause the same to be published three months before the next general election, in at least two newspapers in every county...." Pa. Const. art. XI, § 1. *See infra*, note 6.

acts which they are required to perform, not discretionary acts, *Nader v. Hughes,* 164 Pa. Cmwlth. 434, 643 A.2d 747 (1994), and, the duties of the Attorney General do not include providing an **in depth illustration** of how a proposed amendment to the constitution may affect the public. His only duty is that: "Whenever a proposed constitutional amendment ... shall be submitted to the electors of the Commonwealth in referendum, [he] shall prepare a statement in plain English which indicates the purpose, limitations and effects of the ballot question on the people of the Commonwealth...." Section 201.1 of Act of June 3, 1937, P.L. 1333, *as amended,* added by Section 1 of the Act of February 19, 1986, P.L. 29, 25 P.S. § 2621.1.

■ Here, the submitted ballot question stated:

Shall the Pennsylvania Constitution be amended to provide (1) that a person accused of a crime has the right to be "confronted with the witnesses against him," instead of the right to "meet the witnesses face to face," and (2) that the General

Assembly may enact laws regarding the manner by which children may testify in criminal proceedings, including the use of videotaped deposition or testimony by closed-circuit television?

25 Pa. B. 3090 (1990). The precise issue this Court must address then is: whether the question presented on the ballot "fairly, accurately and clearly apprises the voter of the question or issue to be voted on?" *Stander v. Kelley,* 433 Pa. 406, 417, 250 A.2d 474, 480 (1969) *cert. denied,* 395 U.S. 827, 89 S.Ct. 2130, 23 L.Ed.2d 738 (1969). We believe that it does. The ballot question on November 7, 1995, was clear and unambiguous. Moreover, the electorate had been given an opportunity to question the proposed amendment, since they had been twice informed of the impending proposal through the required notification process of Article XI, Section 1 of the Pennsylvania Constitution, with which the Lincoln Party does not take issue.[6]

We additionally conclude, therefore, that the Lincoln Party has failed to present a cause of action upon which the requested relief can be granted.

---

**6.** The Pennsylvania Constitution provides a complete and detailed procedure for the passage of an amendment of the Constitution. Article XI, Section 1 of the Pennsylvania Constitution states in pertinent part:

Amendments to this Constitution may be proposed in the Senate or House of Representatives; and if the same shall be agreed to by a majority of the members elected to each House, such proposed amendment or amendments shall be entered on their journals with the yeas and nays taken thereon, and the Secretary of the Commonwealth shall cause the same to be published three months before the next general election, in at least two newspapers in every county in which such newspapers shall be published; and if, in the General Assembly next afterwards chosen, such proposed amendment or amendments shall be agreed to by a majority of the members elected to each House, the Secretary of the Commonwealth shall cause the same again to be published in the manner aforesaid; and such proposed amendment or amendments shall be submitted to the qualified electors of the State in such manner, and at such time at least three months after being so agreed to by the two Houses, as the General Assembly shall prescribe; and if such amendment or amendments shall be approved by a majority of those voting thereon, such amendment or amendments shall become

a part of the Constitution; but no amendment or amendments shall be submitted oftener that once in five years. When two or more amendments shall be submitted they shall be voted upon separately.

The reason for the publication of the initial approval of the General Assembly of the proposed Constitutional amendment three months before the general election is to permit the "electorate abundant opportunity to be advised of proposed amendments and to let the public ascertain the attitude of the candidates for election to the General Assembly 'next afterwards chosen'." *Kremer v. Grant,* 529 Pa. 602, 611, 606 A.2d 433, 438 (1992). There is then a second publication which follows the General Assembly's second approval of the amendment, which must occur during a succeeding session of the Legislature.

The statement which the Attorney General publicized contained the purpose, limitations and effects of the ballot question, and provided an address and telephone number of the Department of State, Bureau of Elections, for the public to use if they had questions concerning the proposal. *See* 25 Pa. B. 3090 (1995).

We note that during oral argument, all of the parties agreed that prior to the November 7, 1995 election, the proposed amendment had proceeded in accordance with Article XI, Section 1.

## GENERAL ASSEMBLY'S PRELIMINARY OBJECTIONS

The General Assembly asserts that the Lincoln Party's petition for review should be dismissed because it is barred by Article II, Section 15 of the Pennsylvania Constitution, which is the Speech and Debate Clause. We agree.

■ Article II, Section 15 states:

The members of the General Assembly shall in all cases, except treason, felony, violation of their oath of office, and breach of surety of the peace, be privileged from arrest during their attendance at the sessions of their respective Houses and in going to and returning from the same; and for any speech or debate in either house they shall not be questioned in any other place.

The Pennsylvania Speech and Debate Clause has been interpreted as being essentially the same as the Speech and Debate Clause found in the Federal Constitution. *Consumer Party of Pennsylvania v. Commonwealth of Pennsylvania*, 510 Pa. 158, 507 A.2d 323 (1986); *Consumers Education and Protective Assoc. v. Nolan*, 470 Pa. 372, 368 A.2d 675 (1977) [*Nolan*]. Also, the federal Speech and Debate Clause has been broadly interpreted to "protect legislators from judicial interference with their legitimate legislative activities...." *Nolan*, 470 Pa. at 382, 368 A.2d at 680. Accordingly, the members, and their staff, of the General Assembly are protected from inquiries into those activities generally said or done in the performance of their official duties. *Nolan; see also Jubelirer v. Singel*, 162 Pa.Cmwlth. 55, 638 A.2d 352 (1994). It is axiomatic that passing legis-

lation, including a proposed amendment to the Constitution, is within the legitimate legislative activity of the Legislature. *Consumer Party*. Quite frankly, the Court cannot envision a more important legislative function. Palpably, then, the Lincoln Party's action against the General Assembly must be dismissed on these grounds.[7]

Accordingly, the preliminary objections of the Attorney General and the General Assembly are sustained and the Lincoln Party's petition for review is dismissed with prejudice.

### ORDER

NOW, September 10, 1996, the preliminary objections of the Attorney General and the General Assembly are sustained and Lincoln Party's petition for review is dismissed.

**7.** The Lincoln Party also appears to argue that the low number of votes in favor of the proposed amendment (1,176,652) as compared with the total number of persons registered to vote (approximately 5,808,000) implies that the public was not sufficiently apprised of the implications of this amendment. This argument is surely without merit. No court has the power to force people to vote. If the public wishes not to partake in its privilege to vote, that is its prerogative.

Additionally, Article XI, Section 1 of the Pennsylvania Constitution mandates that only *a majority of those voting upon the proposal* is needed for an amendment to the Constitution to become a part of the Constitution. In this case, 1,176,652 votes were cast in favor of the proposal and only 400,727 votes were cast in opposition; thus, a majority of those who did vote, voted in favor of the amendment.