**PENNSYLVANIA PRISON SOCIETY,
Julia D. Hall et al., Petitioners,**

v.

**COMMONWEALTH of Pennsylvania;
Honorable Tom Ridge, Governor
et al., Respondents.**

Commonwealth Court of Pennsylvania.

Argued Nov. 18, 1998.
Decided March 22, 1999.

William Costopoulos, Lemoyne, Gerald C. Grimaud, Tunkhannock, Gregory H. Knight, Harrisburg, and Robert A. Preate, Scranton, for petitioners.

Calvin R. Koons, Harrisburg, for respondents.

Before COLINS, President Judge, and McGINLEY, J., SMITH, J., PELLEGRINI, J., FRIEDMAN, J., KELLEY, J., and FLAHERTY, J.

COLINS, President Judge.

Presently before this Court are cross motions for judgment on the pleadings filed respectively by the petitioners, the Pennsylvania Prison Society, Julia D. Hall and others (collectively, the Prison Society) and by the respondents, the Commonwealth of Pennsylvania, Governor Tom Ridge, and others (collectively, the Commonwealth).

■ The parties dispute the legality of changes to Article IV, Section 9 of the Pennsylvania Constitution, which changes were approved by the electorate on November 4, 1997. The ballot question presented to the voters on that day was posed as follows:

Shall the Pennsylvania Constitution be amended to require a unanimous recommendation of the Board of Pardons before the Governor can pardon or commute the sentence of an individual sentenced in a criminal case to death or life imprisonment, to require only a majority vote of the Senate to approve the Governor's appointments to the Board, and to substitute a crime victim for an attorney and a corrections expert for a penologist as Board members?

As required by Article XI, Section 1 of the Pennsylvania Constitution, the proposed amendments were approved by two successive sessions of the General Assembly and were published three months before the November 1997 general election. The parties' primary dispute concerns whether the changes to Article IV, Section 9, which were posed in a single ballot question, comprise one amendment or several amendments. Their secondary dispute, which is closely related to the first, concerns whether the Attorney General's "plain English statement," which was published with the ballot question, was sufficient.[1] An additional dispute concerns whether the changes, as implemented, violate the Ex Post Facto Clause of the United States Constitution.[2]

A motion for judgment on the pleadings in this court's original jurisdiction is in the nature of a demurrer; all of the opposing party's allegations are viewed as true and only those facts which have been specifically admitted by him may be considered against him. The court may only consider the pleadings themselves and any documents properly attached thereto.

*Bergdoll v. Kane,* 694 A.2d 1155, 1157 (Pa. Cmwlth.1997), *appeal pending,* No. 55 M.D. Appeal Docket 1997. "[A] vote of the people cannot validate and Constitutionalize anything which violates a provision of the Constitution, and ... this question or issue of Constitutionality is justiciable after the voters have adopted such a provision...." *Stander v. Kelley,* 433 Pa. 406, 412–13, 250 A.2d 474, 477 (1969) (emphasis omitted).

The primary dispute is whether the changes to Article IV, Section 9 of the Pennsylvania Constitution constitute one amendment or several amendments. If they constitute several amendments, the ballot question submitting those amendments to the voters violated Article XI, Section 1 of the Constitution, which provides that "[w]hen two or more amendments shall be submitted they shall be voted upon separately." The Prison Society asserts that the ballot question, which proposed four amendments to Article IV, Section 9 but which actually contained five amendments, should have been submit-

---

1. The plain English statement is required by Section 201.1 of the Pennsylvania Election Code (Election Code), Act of June 3, 1937, P.L. 1333, added by the Act of February 19, 1986, P.L. 29, *as amended,* 25 P.S. § 2621.1.

2. Initially, the Prison Society filed a complaint in this Court on October 16, 1997. That action was removed to the United States District Court for the Middle District of Pennsylvania by the Commonwealth. After the ballot question was approved, on January 5, 1998, the Prison Society filed an amended complaint in the United States District Court for the Middle District of Pennsylvania. That court, on January 15, 1998, remanded the state law claims to this Court.

ted to the voters as five questions to be approved separately. In contrast, the Commonwealth asserts that the amendment constituted a single question despite the fact that it contained several parts, because all of the parts pertained to one provision of the Constitution and addressed one topic, the Board of Pardons.

"Where, as here, we must decide between two interpretations of a constitutional provision, we must favor a natural reading which avoids contradictions and difficulties in implementation, which completely conforms to the intent of the framers and which reflects the views of the ratifying voter." *Commonwealth ex rel. Paulinski v. Isaac,* 483 Pa. 467, 477, 397 A.2d 760, 766, *cert. denied,* 442 U.S. 918, 99 S.Ct. 2841, 61 L.Ed.2d 286 (1979). "A constitution is not to receive a technical or strained construction, but rather the words should be interpreted in their popular, natural and ordinary meaning." *Commonwealth v. Harmon,* 469 Pa. 490, 494–95, 366 A.2d 895, 897 (1976). "[W]here the language used is untechnical, it is to be construed as the people who voted for [it] probably understood it[.]" *O'Connor v. Armstrong,* 299 Pa. 390, 396, 149 A. 655, 657 (1930). Amendment is defined as "an alteration proposed or effected by" the process of amending. Webster's Third New International Dictionary 68 (1993). Amend is defined as follows: "to alter (as a motion, bill, or law [or constitution] ) formally by modification, deletion, or addition." *Id.* Considering these principles and definitions, we have no doubt that the word amendment in Article XI, Section 1 means a single change to the Constitution.

The process of amending the Constitution described in Article XI, Section 1 has been described by the Supreme Court of Pennsylvania as "a concentration of all the power of the people in establishing organic law for the commonwealth. . . . It is not lawmaking, which is a distinct and separate function, but it is a specific exercise of the power of a people to make its constitution." *Common-*

*wealth ex rel. v. Griest,* 196 Pa. 396, 404, 46 A. 505, 506 (1900).

The Constitution is the fundamental law of our Commonwealth, and in matters relating to alterations or changes in its provisions, the courts must exercise the most rigid care to preserve to the people the right assured to them by that instrument. No method of amendment can be tolerated which does not provide the electorate adequate opportunity to be fully advised of proposed changes.

*Commonwealth ex rel. Attorney General v. Beamish,* 309 Pa. 510, 515, 164 A. 615, 616–17 (1932). Not only must the electorate be fully advised of the proposed changes to the Constitution, but also all of the Constitution's technical requirements for amendment must be observed.[3] Amendments to the Constitution should not be taken lightly or made easily. The process described in Article XI, Section 1 is reserved for simple, straightforward changes to the Constitution, easily described in a ballot question and easily understood by the voters. This process should not be used to circumvent a constitutional convention, the process for making complex changes to the Constitution, as we believe was done in this case. When multiple changes with important ramifications for our system of criminal justice are proposed, as here, the electorate cannot be adequately informed of the changes and their effects by a single ballot question and a brief, plain English statement.

We agree with the Supreme Court of Oregon that the requirement that amendments be voted on separately "serves as a safeguard that is fundamental to the concept of a constitution." *Armatta v. Kitzhaber,* 327 Or. 250, 276, 959 P.2d 49, 63 (1998). As our Supreme Court stated in *Griest,* amending the Constitution is not lawmaking, i.e., the making of legislation. It is the changing of our organic law, i.e., "constitutionmaking." The voters must be able to express their will as to each substantive constitutional change separately, especially if these changes are

---

**3.** The Pennsylvania Supreme Court has said that "all the clear and mandated provisions of the Constitution must be strictly followed and obeyed and no departures from or circumventions or

violations of existing mandatory Constitutional amendment requirements will be permitted." *Stander v. Kelley,* 433 Pa. at 416, 250 A.2d at 479.

not so interrelated that they must be made together. If multiple changes are so interrelated that they must be made together, as a unit, then they are too complex to be made by the process described in Article XI, Section 1. Those changes should be made by constitutional convention, where they can be more adequately debated and understood.

■ The ballot question presented to the voters on November 4, 1997, contained four changes to the Pennsylvania Constitution, and the Prison Society asserts that it neglected to describe a fifth change. The first change involved the Board of Pardon's (Board) recommendation regarding a prisoner sentenced to life or death. For those prisoners, the Board's recommendation to the Governor as to pardon or commutation was changed to be by a unanimous vote of the Board rather than by a majority vote. The second change involved the vote of the Senate to confirm the Governor's nominees to the Board. The required vote was changed to be by majority vote of the Senate rather than by majority or two-thirds vote as specified by law. The third change involved the substitution of a crime victim for the attorney member of the Board, and the fourth change involved the substitution of a corrections expert for the penologist member of the Board. The fifth change was the deletion of the words "and shall be recognized leaders in their fields," which phrase described the three members appointed by the Governor.

The Commonwealth argues that the deletion of this phrase "was simply an editorial change necessitated by the other changes in the composition of the Board[,]" because it not longer made sense as a qualifier. (Commonwealth brief, p. 16.) We agree, however, with the Prison Society, that the ballot question did not adequately describe the changes to Article IV, Section 9. What the United States Supreme Court wrote about the U.S. Constitution applies equally to the Pennsylvania Constitution: "Nothing new can be put into the Constitution except through the amendment process. Nothing old can be taken out without the same process." *Ull-*

*mann v. United States,* 350 U.S. 422, 428, 76 S.Ct. 497, 100 L.Ed. 511 (1956).

In summary, we hold that the process by which Article IV, Section 9 was amended violated the Article XI, Section 1 requirement that "two or more amendments ... be voted upon separately." The single ballot question presented to the voters on November 4, 1997 described four amendments and neglected to describe a fifth. If these amendments were so interrelated that they needed to be adopted as a unit, they should have been submitted to a constitutional convention. Otherwise, each modification, deletion, or addition should have been submitted to the voters as a separate question.

■ The parties' secondary dispute, which is closely related to their primary dispute, involves the adequacy of the Attorney General's plain English statement. Section 201.1 of the Election Code, 25 P.S. § 2621.1, requires that when a proposed constitutional amendment is published, it be accompanied by "a statement in plain English [that is prepared by the Attorney General and] which indicates the purpose, limitations and effects of the ballot question on the people of the Commonwealth." While we acknowledge that "the duties of the Attorney General do not include providing an *in depth illustration* of how a proposed amendment to the constitution may affect the public[,]" [4] the Attorney General is required to comply with Section 201.1 of the Election Code by describing the purpose, limitations and effects of the ballot question. He did not do so in this case.

We agree with the Prison Society that the plain English statement confuses the purpose of the changes with a description of the actual changes (though it omits the deletion of the phrase "and shall be recognized leaders in their fields"). Additionally, the statement only cursorily describes the effects and limitations. The Attorney General attempts to satisfy the requirements for the plain English statement by restating the proposed amendments, but this is not enough. The electorate must be informed of the ramifications of the amendments in real life terms

4. *Lincoln Party v. General Assembly,* 682 A.2d          1326, 1332 (Pa.Cmwlth.1996)

and of the reasons why the General Assembly believes the amendments are necessary. The plain English statement's only indication of the purposes, limitations, and effects of the amendments is the following:

> The effect of the ballot question would be to make it more difficult for an individual sentenced to death or life imprisonment to obtain a pardon or commutation of sentence, to ease to process for Senate approval of the Governor's appointment to the Board of Pardons, and to ensure that crime victims are represented on the Board.

This statement, however, cannot serve to satisfy all three requirements of the plain English statement, and it gives the voters no explanation as to why the changes were needed or as to how the changes might affect other parts of the Constitution, e.g., Article IV, Section 2 (duties of the governor). We hold that the statement is inadequate to satisfy the requirements of Section 201.1 of the Election Code, 25, P.S. § 2621.1.

█ The additional dispute between the parties concerns whether the amendments to Article IV, Section 9 offend the Ex Post Facto Clause of the United States Constitution. We will not address this issue, because jurisdiction over the federal claims was retained by the United States District Court for the Middle District of Pennsylvania when it remanded the state claims to this Court. Although the amended complaint did contain a claim based on the Ex Post Facto Clause of the Pennsylvania Constitution, this question was not briefed by either party and has been waived. *Harvilla v. Delcamp*, 521 Pa. 21, 555 A.2d 763 (1989).

Accordingly, the November 4, 1997 vote on the ballot question is null and void, as the single ballot question contained five amendments to the Pennsylvania Constitution. The motion for judgment on the pleadings filed by petitioners, the Pennsylvania Prison Society *et al* is granted. The motion for judgment on the pleadings filed by the respondents, the Commonwealth of Pennsylvania *et al* is denied.

1. Act of June 3, 1937, P.L. 1333, *added by* the Act of February 19, 1986, P.L. 29, *as amended*, 25

### ORDER

AND NOW, this 22nd day of March 1999, the motion for judgment on the pleadings filed by the Pennsylvania Prison Society *et al* is **GRANTED**.

The motion for judgment on the pleadings filed by the Commonwealth of Pennsylvania *et al* is **DENIED**.

PELLEGRINI, Judge, dissenting.

I respectfully dissent from the majority's holding that the ballot question passed by voters at the November 1997 election amending Article IV, Section 9 of the Pennsylvania Constitution (Amendment) was unconstitutional because it violated Article XI, Section 1 of the Constitution by containing more than one amendment in a single ballot question. I also disagree with its holding that the Amendment is null and void because the Attorney General's "plain English statement" required by Section 201.1 of the Election Code,[1] 25 P.S. § 2621.1, was deficient.

The ballot question presented to the voters was:

> Shall the Pennsylvania Constitution be amended to require a unanimous recommendation of the Board of Pardons before the Governor can pardon or commute the sentence of an individual sentenced in a criminal case to death or life imprisonment to require only a majority vote of the Senate to approve the Governor's appointments to the Board, and to substitute a crime victim for an attorney and a corrections expert for a penologist as Board members?

The ballot question, if passed, would amend Article IV, Section 9 of the Pennsylvania Constitution to read as follows:

**Pardoning power; Board of Pardons.**

(a) In all criminal cases except impeachment the Governor shall have power to remit fines and forfeitures, to grant reprieves, commutation of sentences and pardons; but no pardon shall be granted, nor

P.S. §§ 2600–3591.

sentence commuted, except on the recommendation in writing of a majority of the Board of Pardons, *and in the case of a sentence of death or life imprisonment, on the unanimous recommendation in writing of the Board of Pardons,* after full hearing in open session, upon due public notice. The recommendation, with the reasons therefor at length, shall be delivered to the Governor and a copy thereof shall be kept on file in the office of the Lieutenant Governor in a docket kept for that purpose.

(b) The Board of Pardons shall consist of the Lieutenant Governor who shall be chairman, the Attorney General and three members appointed by the Governor with the consent of [two-thirds or] a majority of the members elected to the Senate [as is specified by law] for terms of six years. The three members appointed by the Governor shall be residents of Pennsylvania [and shall be recognized leaders in their fields; one]. *One* shall be a [member of the bar,] *crime victim;* one a [penologist,] *corrections expert;* and a third a doctor of medicine, psychiatrist or psychologist. The board shall keep records of its actions, which shall at all times be open for public inspection.

Joint Resolution 1997–2 (additions are italicized; deletions are bracketed).

Petitioners contend that the ballot question violated Article XI, Section 1 of the Constitution which provides that "[w]hen two or more amendments shall be submitted they shall be voted upon separately." They contend that it violated that provision because the ballot question, rather than submitting one question to the ballot, actually submits five questions which are:

1. A vote of the Board of Pardons to recommend clemency to the Governor for someone sentenced to life or death must be unanimous rather than by majority vote.

2. A nominee to the Board was to be confirmed by vote of a majority rather than two-thirds of the Senate.

3. Substitution of a "crime victim" rather than an attorney member of the Board.

4. Substitution of a corrections expert rather than a penologist member of the Board.

5. Deletion of the phrase "and shall be recognized leaders in their field" which phrase described the three members appointed by the Governor to the Board.

Agreeing with the Prison Society, the majority holds that each of those changes is a separate change, and because they were all submitted in the same ballot question, Article XI, Section 1's requirement that each amendment be submitted in a separate ballot question was violated making the proposed constitutional Amendment itself unconstitutional.

While inexplicably not relied on by the majority in deciding that the ballot question contained more than one amendment, I believe this case is controlled by our decision in *Bergdoll v. Kane,* 694 A.2d 1155 (Pa.Cmwlth. 1997),[2] where this court struck down on the same basis a constitutional amendment affecting criminal defendants' rights to confront witnesses and allowing the General Assembly to enact laws regarding the manner in which children may testify in criminal proceedings. For the same reason I dissented in that case, I dissent here. While there were many changes made by this Amendment, all of those changes directly relate to a single subject – the conduct of affairs at the Board of Pardons – with the object of making it more difficult for a defendant to obtain a pardon or parole. Because it relates to a single subject, I would find that the ballot question was proper and the Amendment constitutional.

The other reason that the majority strikes down the ballot question is that the Attorney General failed to comply with the provisions of Section 201.1 of the Election Code, 25 P.S. §2621.1, requiring that when a proposed constitutional amendment is published, that it be accompanied by a statement in plain English [prepared by the Attorney General] which indicates the purpose, limitations and effects of the ballot question on people of the Com-

**2.** It does cite *Bergdoll* but only for the standard

to grant a motion for judgment on the pleadings.

monwealth. Pursuant to his statutory obligation, the Attorney General issued a statement explaining the proposed changes as follows:

The purpose of the ballot question is to amend the Pennsylvania Constitution to add a provision concerning the recommendation that must be given by the Board of Pardons before the Governor can pardon or commute the sentence of an individual sentenced in a criminal case to death or life imprisonment and to change provisions regarding the process of appointing Board members and the composition of the Board membership.

The Pennsylvania Constitution now provides that in all criminal cases except impeachment, the Governor has the power to grant reprieves, commutation of sentences and pardons, but only on the recommendation in writing of a majority of the members of the Board of Pardons. The proposed amendment would require the unanimous recommendation of the Board before the Governor could pardon or commute the sentence of an individual sentenced to death or life imprisonment. The Constitution would continue to require only a majority vote of the Board to enable the Governor to grant a pardon or commute a sentence in a criminal case involving a sentence other than death or life imprisonment.

The Pennsylvania Constitution now provides that the members of the Board of Pardons are the Lieutenant Governor who is made Chairman, the Attorney General, and three members appointed by the Governor with the consent of two-thirds or a majority of the Pennsylvania Senate as provided by law. Of the three members appointed by the Governor, the Constitution now requires that one be an attorney, one be a penologist, and one be a doctor. The proposed amendment would eliminate the option of requiring the Governor's appointments to be approved by two-thirds of the Senate, thus requiring appointments to be approved by only a majority of the Senate. The amendment would replace the attorney member of the Board with a crime victim member and would change the member described as a penologist to a member described as a corrections expert.

The effect of the ballot question would be to make it more difficult for an individual sentenced to death or life imprisonment to obtain a pardon or commutation of sentence, to ease the process for Senate approval of the Governor's appointments to the Board of Pardons and to ensure that crime victims are represented on the Board.

I disagree with the majority that this statement does not adequately explain the proposed changes because it explains the purpose of the changes and the effect it would have on the ability of an individual to ascertain a pardon or commutation. Under the majority's reasoning, what would be required to satisfy the provision of the Election Code would not be a plain English statement but a treatise explaining every possible consequence of the proposed amendment.

Even if I agreed with the majority that the Attorney General's statement was deficient, I still would not strike down the Amendment. While the General Assembly may be able to enact laws that aid the voters in understanding the proposed Amendment, those additional requirements cannot effect the validity of the amendment once passed by the voters. The Pennsylvania Constitution proscribes the manner in which it is to be amended, and only a failure to follow those constitutional requirements can be the basis for finding that an amendment was improperly presented to the voters. Accordingly, once the amendment has passed, the Attorney General's compliance or lack of compliance with that "plain English statement" required by the Election Code becomes a moot issue.

Accordingly, I respectfully dissent.

KELLEY, Judge, dissenting.

I respectfully dissent.

On November 4, 1997, the voters in this Commonwealth were presented with a ballot question regarding the amendment of Article IV, Section 9 of the Pennsylvania Constitution. All of the proposed changes contained in the ballot question related solely and exclusively to the provisions of Article IV, Sec-

tion 9 and the Board of Pardons. As a result, the amendment to the Pennsylvania Constitution adopted by the voters of Pennsylvania on November 4, 1997 does not violate the provisions of Article XI, Section 1 of that constitution. *See Bergdoll v. Kane,* 694 A.2d 1155 (Pa.Cmwlth.1997) (Dissenting Opinion by Pelligrini, J.) *citing Andrews v. Governor of Maryland,* 294 Md. 285, 449 A.2d 1144 (1982) and *Hatcher v. Meredith,* 295 Ky. 194, 173 S.W.2d 665 (1943).

In addition, it is clear that the Pennsylvania Attorney General's plain English statement of the proposed amendment comports with section 201.1 of the Pennsylvania Election Code.[1] The majority, quoting *Lincoln Party v. General Assembly,* 682 A.2d 1326 (Pa.Cmwlth.1996), correctly observes that the Attorney General is not required to provide an in-depth illustration of how a proposed amendment may affect the public. Rather, the Attorney General is only required to briefly describe the purpose, limitations and effects of the ballot question. 25 P.S. § 2621.1; *Lincoln Party.*

The full statement provided by the Attorney General reads as follows:

### Statement of Attorney General Regarding Joint Resolution 1997–2

Changes in Board of Pardons Voting, Appointment Process and Composition

The purpose of the ballot question is to amend the Pennsylvania Constitution to add a provision concerning the recommendation that must be given by the Board of Pardons before the Governor can pardon or commute the sentence of an individual sentenced in a criminal case to death or life imprisonment and to change provisions regarding the process of appointing Board members and the composition of the Board membership.

The Pennsylvania Constitution now provides that in all criminal cases except impeachment, the Governor has the power to grant reprieves, commutation of sentences and pardons, but only on the recommendation in writing of a majority of the members of the Board of Pardons. The proposed amendment would require the unanimous recommendation of the Board before the Governor could pardon or commute the sentence of an individual sentenced to death or life imprisonment. The Constitution would continue to require only a majority vote of the Board to enable the Governor to grant a pardon or commute a sentence in a criminal case involving a sentence other than death or life imprisonment.

The Pennsylvania Constitution now provides that the members of the Board of Pardons are the Lieutenant Governor who is made Chairman, the Attorney General, and three members appointed by the Governor with the consent of two-thirds or a majority of the Pennsylvania Senate as provided by law. Of the three members appointed by the Governor, the Constitution now requires that one be an attorney, one be a penologist, and one be a doctor. The proposed amendment would eliminate the option of requiring the Governor's appointments to be approved by two-thirds of the Senate, thus requiring appointments to be approved by only a majority of the Senate. The amendment would replace the attorney member of the Board with a crime victim member and would change the member described as a penologist to a member described as a corrections expert.

The effect of the ballot question would be to make it more difficult for an individual sentenced to death or life imprisonment to obtain a pardon or commutation of sentence, to ease the process for Senate approval of the Governor's appointments to the Board of Pardons, and to ensure that crime victims are represented on the Board.

27 Pa.B. 3994 (1997). Contrary to the majority's determination, based on this statement I would conclude, as we did in *Lincoln Party,* that the Attorney General fairly and fully complied with the requirements of section 201.1 of the Pennsylvania Election Code.

---

1. Act of June 3, 1937, P.L. 1333, added by the Act of February 19, 1986, P.L. 29, *as amended,*

25 P.S. § 2621.1.

Based on the foregoing, I would conclude that neither the Pennsylvania Constitution nor the Pennsylvania Election Code was violated in the adoption of the amendment to Article IV, Section 9 of the Pennsylvania Constitution. Because the voters in Pennsylvania properly exercised their inalienable and indefeasible right to alter the basic form of their government, it is our duty to heed their instructions. *Bergdoll,* 694 A.2d at 1161–1162 (Dissenting Opinion by Kelley, J.). As a result, I would deny the motion for judgment on the pleadings filed by the Pennsylvania Prison Society *et al.,* and grant the motion for judgment on the pleadings filed by the Commonwealth of Pennsylvania *et al.*