606 A.2d 433

I. Raymond KREMER and Sandra M. Liberatori,
Appellees/Cross–Appellants,

v.

Honorable Robert N. GRANT, et al.; Commonwealth, General
Assembly, Intervenor, Appellants/Cross–Appellees.

Appeal of Honorable Robert N. GRANT and
Ernest D. Preate, Attorney General.

Henry T. REATH, Esquire, Appellee/Cross–Appellant,

v.

Honorable Robert N. GRANT, et al.; Commonwealth,
General Assembly, Intervenor.

Appeal of Honorable Robert N. GRANT and
Ernest D. Preate, Attorney General.

James F. MUNDY, et al., Appellees/Cross–Appellants,

v.

Honorable Robert N. GRANT, et al.; Commonwealth,
General Assembly, Intervenor.

Appeal of Honorable Robert N. GRANT and
Ernest D. Preate, Attorney General.

Supreme Court of Pennsylvania.

Argued Oct. 24, 1991.

Decided March 12, 1992.

I. Raymond Kremer, pro se.
Sandra M. Liberatori, pro se.
Henry T. Reath, pro se.

604

Richard A. Sprague, pro se.

David R. Dearden, pro se.

Gerald E. Arth, pro se.

Kate L. Mershimer, Susan J. Forney, Sen. Deputy Attys. Gen., John G. Knorr, III, Chief Deputy Atty. Gen., for Robert N. Grant et al.

Amy B. Ginensky, Philadelphia, for amicus curiae, Phila. Bar Ass'n.

C. Clark Hodgson, Jr., Jane Landes Foster, Pauline C. Scalvino, Philadelphia for intervenor-Com. Gen. Assembly.

Before NIX, C.J., and FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

Before us are three appeals and cross-appeals from the unpublished opinion and order entered by the Honorable David W. Craig, President Judge of the Commonwealth Court, sitting as a single judge in that court's original jurisdiction. This order preliminarily enjoins the Secretary of the Commonwealth of Pennsylvania from:

1) Publishing in any newspapers of the Commonwealth proposed amendments to the Pennsylvania Constitution contained in Joint Resolution 1990–1 (J.R. 1990–1) and Joint Resolution 1991–1 (J.R. 1991–1) of the Pennsylvania General Assembly;

2) Certifying to the various county boards of election the form and wording of any proposed amendments to the Pennsylvania Constitution contained in J.R. 1990–1 and J.R. 1991–1; and

3) Taking any further actions to place the proposed constitutional amendments contained in J.R. 1990–1 and J.R. 1991–1 on the ballot until a final decision on all the issues raised by the parties is entered.

The various parties instituting this litigation against the Secretary of the Commonwealth and the Attorney General did so by filing petitions for review in the Commonwealth Court seeking a declaratory judgment, applying for injunctive relief in equity and included:

JUDGE I. RAYMOND KREMER and ATTORNEY SANDRA M. LIBERATORI, (21 and 27 M.D. Appeal Docket 1991);

PRESIDENT JUDGE JOHN W. KELLER, elector and taxpayer, JOHN MORRIS and ATTORNEYS JAMES F. MUNDY, ROBERT W. MUNLEY and PHILIP BASKIN (23 and 28 M.D. Appeal Docket 1991); and

ATTORNEY HENRY T. REATH (22 and 29 M.D. Appeal Docket 1991).

These parties all sought preliminary injunctive relief in the form of an order barring the May, 1991 primary referendum vote on the constitutional amendments and President Judge Craig consolidated the actions and held hearings on the preliminary injunction requests.

During the five days of hearings and arguments (March 25, 26, 27, 28 and 29, 1991) the proceedings focused on whether there were violations of the lawful procedures and modes for presenting constitutional amendments to the electorate, with any results or effects which would warrant preliminary injunctive relief.

Specifically, those advocating that the May 1991 primary referendum vote be enjoined argued that such action was proper because:

1) Constitutional amendments can only be voted on at general elections and not at primaries;

2) The General Assembly improperly delegated to the Secretary of the Commonwealth the right to select when the referendum would be submitted to the people;

3) The proposed amendment is a multiple ballot question which is improper under the amendment procedure;

4) The advertisement provisions of the Constitution have not been satisfied;

5) The absence of a Plain English Statement in the 1990 advertisements rendered the attempt at compliance with the statutory provisions on advertising impossible;

6) The content of the Plain English Statement in the 1991 advertisement is statutorily inadequate; and

7) The text of the proposed amendments concerning funding of the judiciary is ambiguous.

President Judge Craig agreed that an improper delegation of power was given to the Secretary of the Commonwealth (issue 2); that the advertising attempts were inadequate (issue 4); and that the Plain English Statement was ambiguous (issue 6). President Judge Craig rejected the proposition that a referendum could only be submitted to the people at a general election (issue 1); ruled that the amendments could be read as embracing one question, thus not violating the two ballot question rule (issue 3); rejected the argument that a Plain English Statement was required with the 1990 advertising attempt (issue 5); and similarly rejected the attempt to argue that ambiguity of a proposed amendment is grounds for enjoining a popular vote (issue 7).

Given President Judge Craig's conclusion that an improper delegation of authority was present and that the advertising attempts were inadequate, he concluded that the petitioners before him had satisfied their burden for obtaining injunctive relief and, therefore, issued an order on April 1, 1991, preliminarily enjoining the amendment process until a final decision could be reached on the merits of all the issues raised.

Immediate appeals were taken by the Secretary of the Commonwealth, the Attorney General, and cross-appeals were taken by the petitioners (on those issues which Judge Craig ruled were meritless) to this Court.

In order to protect the status quo, the Commonwealth Court entered its order vacating the automatic supersedeas (which attached to the April 1, 1991 injunction upon the filing of an appeal with this Court) and the Attorney Gener-

al and Secretary of the Commonwealth petitioned us to stay the effect of the injunction order. We denied this request by per curiam order on April 10, 1991, and the matter proceeded to argument. In the interim, the General Assembly petitioned to intervene, which petition was granted.

When all of the procedure and confusion generated by the parties is brushed aside, it is clear that the only matter before this Court is an appeal from the grant of a preliminary injunction. What we have said many times before merits repeating at this point, namely:

> As a preliminary consideration, we recognize that on an appeal from the grant or denial of a preliminary injunction, *we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below.* Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the Chancellor. *Intraworld Inc. v. Girard Trust Bank*, 461 Pa. 343, 336 A.2d 316 (1975); *Credit Alliance Corp. v. Philadelphia Minit–Man Car Wash Corp.*, 450 Pa. 367, 301 A.2d 816 (1973); *Zebra v. Pittsburgh School District*, 449 Pa. 432, 296 A.2d 748 (1972). *"In order to sustain a preliminary injunction, the plaintiff's right to relief must be clear, the need for relief must be immediate, and the injury must be irreparable if the injunction is not granted."* *Zebra v. Pittsburgh School District*, 449 Pa. at 437, 296 A.2d at 750. (Emphasis added). *Roberts v. School District of Scranton*, 462 Pa. 464, 469, 341 A.2d 475, 478 (1975). *Willman v. Children's Hospital of Pittsburgh*, 505 Pa. 263, 269, 479 A.2d 452, 454–55 (1984).

Thus, our only task in this appeal is to determine, from a review of the record, if the issuance of preliminary injunctive relief was based upon any apparently reasonable grounds.

The Constitution is specific in providing a complete and detailed process for the amendment of that document and requires at Article XI:

Amendments to this Constitution may be proposed in the Senate or House of Representatives; and if the same shall be agreed to by a majority of the members elected to each House, such proposed amendment or amendments shall be entered on their journals with the yeas and nays taken thereon, and the Secretary of the Commonwealth shall cause the same to be published three months before the next general election, in at least two newspapers in every county in which such newspapers shall be published; and if, in the General Assembly next afterwards chosen, such proposed amendment or amendments shall be agreed to by a majority of the members elected to each House, the Secretary of the Commonwealth shall cause the same again to be published in the manner aforesaid; and such proposed amendment or amendments shall be submitted to the qualified electors of the State in such manner, and at such time at least three months after being so agreed to by the two Houses, as the General Assembly shall prescribe; and, if such amendment or amendments shall be approved by a majority of those voting thereon, such amendment or amendments shall become a part of the Constitution; but no amendment or amendments shall be submitted oftener than once in five years. When two or more amendments shall be submitted they shall be voted upon separately.

It is undisputed that on June 29, 1990, the General Assembly approved Joint Resolution No. 1 of the Session of 1990 (J.R. 1990-1), the first portion of which proposes to amend Article V, Section 17 of the Pennsylvania Constitution by requiring this Court to impose upon the judiciary and other officers or employees of the unified judicial system financial disclosure requirements providing for no less disclosure than provided by law for members of the General Assembly.

The second portion of the Resolution creates an extensive new judiciary discipline process to replace the nine-member Judicial Inquiry and Review Board (JIRB). The third portion of the resolution proposes to amend Article V, Section 22 of the Pennsylvania Constitution and would require the Supreme Court to submit budgets for the appellate courts, the state court administrator and other statewide agencies, committees and statewide units of the unified judicial system to the Governor and the General Assembly.

It is also undisputed that the next general election after June 29, 1990, was to be on Tuesday, November 6, 1990, and that "the date three months before the next general election" was Monday, August 6, 1990. The record shows that on August 2, 1990, the Secretary of the Commonwealth sent to two newspapers in every county (118 newspapers) the text of J.R. 1990–1, with directions that advertisement be published once each month no later than August 6, September 6 and October 6, 1990. The record also shows that of these 118 newspapers, only 6 published the proposed amendments on or before August 6 and the remaining publications were after August 6, 1990, distributed over the period from August 7 to August 30, 1990.

When it was discovered that some of the newspapers were shopping publications distributed free, and, therefore not paid circulation papers defined as "newspapers" lawful for legal advertising under 45 Pa.C.S. § 101, other newspapers were selected as replacements and a letter was sent to these publications on August 17, 1990, explaining that the text should be published with punctuation and underlining to show what text is being added or deleted and that publication should be no later than August 22, September 6 and October 5, 1990. It was also discovered that many newspapers in response to the August 2, 1990, instructions had published the advertisements without brackets or underlining and these publications, by letter of August 21, 1990, were instructed to print correct versions by August 31, 1990.

With a few exceptions, the 118 newspapers published the J.R. 1990-1 resolution in September of 1990 on or before the 6th, and in October of 1990 on or before the 5th, but none contained an explanation of the brackets or underlining.

After the 1991-1992 General Assembly took office following the 1990 general election, it reapproved the previous joint resolution without change, adopting same as Joint Resolution No. 1 of 1991 (J.R. 1991-1) on February 12, 1991, and directed that the financial disclosure provisions and the judiciary discipline provisions be submitted to the voters as one question and that the funding provisions be submitted as a second question. Finally, the Resolution directed that the submission of the questions shall be by the:

Secretary of the Commonwealth to the qualified electors of this Commonwealth at the primary, general or municipal election next held after the advertising requirements of Section 1 of Article XI of the Constitution of Pennsylvania have been satisfied.

In response to the directions of the General Assembly, the Secretary of the Commonwealth had letters distributed to newspapers with directions that advertisement be published no later than February 21, March 21 and April 19, 1991, which indicated to the Chancellor that the questions would be submitted to the people at the May 21, 1991 primary election.

It appears that no February publication occurred in four counties—Green, Lancaster, Monroe, and Perry, and that 14 publications advertised after February 21, 1991. Most distressing is the uncontroverted fact that in Philadelphia, the February publication was in the *Philadelphia Tribune,* circulation under 6,800 and the *Philadelphia New Observer,* paid circulation under 90, and that the first publication in a large newspaper was not until March 21, 1991, in the *Philadelphia Inquirer,* which had refused to publish in February on account of a dispute over late state payment of previous invoices.

■■■■ In reviewing the record to determine whether the advertising requirements have been met, we begin by restating that once the General Assembly agrees to a proposed constitutional amendment, the Secretary of the Commonwealth is directed to cause the proposed amendment to be "published three months before the next general election." What is required is that the Secretary transmit the required notices to two newspapers in each county of the state *in ample time* to permit their insertion at a date three months or more in advance of the election. The reason for this requirement is to afford the electorate abundant opportunity to be advised of proposed amendments and to let the public ascertain the attitude of the candidates for election to the General Assembly "next afterwards chosen." *Commonwealth ex rel. v. King*, 278 Pa. 280, 122 A. 279 (1923); *Tausig v. Lawrence*, 328 Pa. 408, 197 A. 235 (1938). For if an informed electorate disagrees with the proposed amendments, they will have an opportunity to indicate their pleasure at the ballot box and elect individuals to the next General Assembly with different attitudes. The advertising provisions are mandatory and in the past we have required that the provisions be strictly complied with:

> To withhold strict compliance with the three months' limitation and substitute a different method of advertisement which substantially accomplishes the desired result would be to rewrite the constitutional provision. It has in clear, specific language determined what must be done to change or amend the fundamental law. Nothing short of a literal compliance with this mandate will suffice. The Constitution has a more sacred position in judicial interpretations than does an act of assembly and judicial exploration should never have as its fulcrum the basic law. Otherwise a dangerous precedent would be created, by substituting the court's own pronouncement for the fundamental law of the State. To hold that advertising provisions do not require literal compliance would create the danger that other procedural steps required by the article may be modified or omitted entirely. No uncer-

tainty or compromise is suggested by the phrase "and the Secretary of the Commonwealth shall cause the same to be published." Any period less than that prescribed by the section will not suffice. *Tausig v. Lawrence*, 328 Pa. at 413–414, 197 A. 235.

■ The record quite clearly shows that on Thursday, August 2, 1990, the Secretary sent letters to the various newspapers directing them to advertise no later than Monday, August 6, 1990. Setting aside for the moment that some of the publications chosen were free shopping publications (which do not qualify as newspapers), 118 newspapers were given Friday, August 3, 1990, Saturday, August 4, 1990, and Sunday August 5, 1990 to comply with the Secretary's directive and publish the advertisement on or before August 6, 1990. Under such circumstances the Chancellor was justified in finding that the Secretary did not transmit the notices in ample time to permit its insertion three months before the general election.

The Secretary, through his staff, testified that the August 2, 1990, mailing was in ample time to permit the 18 newspapers to publish during the *month* of August, 1990, and that such an advertising would satisfy the constitutional requirement pursuant to a 1972 opinion of the Attorney General (N.T., Volume III, p. 519). To the extent that the Secretary, or his staff, relied on any authority other than the Constitution itself and our decisions interpreting that document, including *Tausig*, he was in error.

The Constitution has vested a grave duty in the Secretary and the failure to carry out what is mandated infects the amendment process with an incurable defect. Four days, two of which are a weekend, are simply not enough time as is evidenced by the fact that only 6 newspapers were able to advertise on or before August 6, 1990.

This defect alone justifies the actions taken by the Chancellor and requires an affirmance of the order granting a preliminary injunction and under such circumstances it is unnecessary to consider the other reasons relied on for the grant of injunctive relief. Without proper advertising, the

electorate in 1990 was denied the opportunity to consider the views of those standing for election to the General Assembly at the 1990 general election, never had the opportunity to be advised of their views or attitudes concerning these amendments and, therefore, could not vote for the 1991–1992 General Assembly with those views and attitudes in mind. Accordingly, a critical procedural step in the amendment process was modified, if not entirely omitted, and this defect makes literal compliance with the rest of the section impossible.

Since the record clearly demonstrates that grounds exist to support the decree, we cannot interfere with the decision of the Chancellor. Accordingly, the order granting the preliminary injunction must be affirmed.

In summary, a review of the record clearly supports a finding that the advertising provisions of Article XI of the Pennsylvania Constitution have not been complied with in that the required notices to two newspapers in each county of the state were not sent in ample time to permit their advertisement three months before the 1990 general election.

Additionally, since the duty to advertise is mandatory, the failure to accomplish what is prescribed by Article XI infects the amendment process with an incurable defect and under such circumstances further proceedings in this matter will be unnecessary.

The Order of the Commonwealth Court is affirmed and the record is remanded to the Commonwealth Court for that court to enter an order permanently enjoining the Secretary of the Commonwealth from advertising or certifying the referendum questions or otherwise taking any action to place the proposed constitutional amendments contained in J.R. 1990–1 and J.R. 1991–1 on any ballot.

McDERMOTT, J., joins the Majority opinion and also files a Concurring Opinion.

LARSEN, J., did not participate in the consideration or decision of this matter.

McDERMOTT, Justice, concurring.

I agree with the majority that the advertisement in the present case was insufficient, and that is sufficient reason to end the matter for the nonce: what is not properly noticed cannot be properly discussed; neither can ballot questions that are ambiguous, multiple and not in plain English be argued and discussed. When a ballot question leaves more questions than answers, or means more or less than it says, such can be as lethal as inadequate notice. The time between initiation of a constitutional amendment and its submission to the voters is designed to prepare and present an understandable question for full discussion. In so important a matter nothing less than full compliance with applicable notice requirement can be acceptable.